First case of the morning, Vantage Deepwater Company v. Petrobras et al. Mr. McKinnon. Thank you. Good morning, your honors. My name is Ari McKinnon. I'm a partner at Cleary Gottlieb in New York, and I'm appearing on behalf of Appellants Petrobras. My colleague Bill Katz from Thompson & Knight is with us from Dallas. Mr. Katz and I have divided the argument between us. I'm going to begin, your honors, by addressing the public policy issue, and then I'm going to hand it over to Mr. Katz to address the discovery and reasoned award issues. Your honors, the court below erred in confirming the majority award over Petrobras' public policy objection. Under Article V of the Panama and New York Conventions, U.S. courts must refuse to confirm an arbitration award where confirming the award would be contrary to U.S. public policy. Here, confirming the majority award's decision to grant Vantage $615 million in lost profits violates the bedrock U.S. public policy against the bribery of foreign public officials. Although the district court and the majority award relied upon the doctrine of ratification to overcome the public policy issue, neither the district court nor the majority award found facts sufficient to cleanse the bribery taint in this case. I want to begin briefly with the applicable standard of review with regard to the public policy argument. As set out in this court's Gulf Coast case, this court, like the district court, defers to the arbitrator's factual findings but reviews de novo the question whether U.S. public policy has been violated. This, of course, requires that the court identify the facts actually found by the majority award, for it is these facts to which deference is owed. The court then applies its independent judgment to determine whether, on the basis of these facts, confirming the majority award in this case would violate U.S. public policy. So, Mr. McKinnon, question on that point. I'm looking at paragraph 288 of the arbitration decision, which says the second and third, second ovation, third amendment occurring two months after respondents completed a bribery audit in October 2013 shows respondents were aware of bribery allegations. Now, is that a factual finding, awareness of bribery allegations on the basis of an audit that we essentially have to accept as a court of appeals? Judge Duncan, yes, that is a factual finding. Awareness of allegations of bribery is a factual finding of the arbitral tribunal to which deference is owed. We submit that that factual finding of awareness of bribery allegations is insufficient as a matter of law to cure the public policy taint with the DSA, the drilling services agreement here. So, the question of ratification is a mixed question of fact and law. The factual finding here is awareness of allegations of bribery. Once you have that factual finding, it's a legal question whether that factual finding gives rise to ratification, whether it can cure the public Is there a continuum of facts? You know, someone may be minimally aware of something such that one couldn't really ratify or someone maybe, you know, maybe have been made aware of lots of facts. I'm just trying to understand, it's not just awareness of allegations, but it's on the What's your response to that? I think significantly, if you go to the audit report, the audit report expressly says that it, quote, cannot prove the veracity of the allegations of bribery. Now, it does find irregularities, deficiencies in the contracting process, but with respect to the specific issue, awareness of bribery, it says it cannot confirm the veracity of those allegations. The audit report in this case is performed two months after a newspaper article comes out. Petrobras interviews 28 witnesses, does a thorough review, and the conclusion of that review, as the majority ward makes clear, is that while Petrobras is aware there are allegations of bribery, and while it may have had suspicions that bribery was afoot, it cannot confirm whether those allegations of bribery are true or false. So, at that point, you have a position where there is no actual knowledge of bribery, even on the majority boards of actual findings. Can you hear me, Mr. McKinnon? I can, Judge Southwick. Okay, it does seem to me, and when we're dealing with ratification, we're not dealing with jury verdicts and whatever, and how much one side has proven its case or not. It's in moving forward with a contract, a contractual relationship, knowing maybe not confirmed allegations, but not completely discarded allegations of a very significant matter like bribery. What is your best authority that it must have been confirmed in some way, instead of just not being dispelled before you can have ratification? I think you go back to, all the way back to the 19th century, Judge Southwick, City of Findlay versus Pertz, through all the cases cited by both parties, the ratification can only occur upon actual knowledge of bribery. So, City of Findlay versus Pertz, for example, which of all involves bribery with a city official, it makes clear that the city could not, consistent with U.S. public policy, be put to the choice of ratification based upon a suspicion. Actual knowledge is what you need to show. Coming forward to 2004, we've cited the Seventh Circuit's decision in Williams, which reverses jury instructions that would have allowed the jury to find ratification without actual knowledge. So, what these cases all tell us, and this is an important issue of public policy, we're not going to put the victim of bribery in a position where it has to make the choice between proceeding or not until it has to. Mr. McKinnon, it seems to me, at most, what you're saying is the arbitration panel misapplied the law of ratification. But they made a clear finding of ratification, and I think everyone agrees that a ratified contract, after the bribery or fraud is discovered, does not violate public policy. So, why isn't this really just an attempt to undo the factual and legal findings that led the arbitration panel to conclude there was ratification, which is something we're just not allowed to do when the parties agree to let arbitrators decide the case? Well, the key issue is that this is an issue of public policy, which is reviewed de novo by this court. The ratification issue cannot be separated from the public policy issue here. The parties concede that a contract obtained through bribery, as a matter of U.S. public policy, could not be confirmed consistent with U.S. public policy. What's your best case that says a court can undo a factual finding or legal conclusion because undoing it, the opposite conclusion they reach, would violate public policy? In other words, the way I see it, the question is, is the decision of the arbitration panel in violation of public policy? You're saying we have to flip their decision and then it would for your view that this public policy basis for invalidation allows us to undo their findings? I wouldn't say you're undoing their findings. We can take all their factual findings as they are. We can take them all as they are. Well, we'd have to undo their finding, their conclusion of ratification. We would have to say they were wrong to say it was ratified, right? So, what's your best case in the public policy part of the Federal Arbitration Act that we can do that? I don't think you'd have to undo, Judge Costa, their finding of ratification. What you'd have to do is take the facts, the facts that they've given you. You've got bribery to procure this DSA. You've got awareness of allegations of bribery by Petrobras. Take those facts. Does confirming that arbitration award, set aside the labels, ratification or whatever it may be, does confirming that arbitration award, does that violate our U.S. public policy against the bribery of foreign public officials? Because again, the label that the arbitral tribunal may have put on this, ratification or not, is really irrelevant. It's the question of what facts were found and how applying those facts, how that would implicate our public policy. And I think this court's decision in the Gulf Coast case provides us a good roadmap of how these issues are to be resolved. You look at the facts as found by the arbitral tribunal, and then you apply your policy issue with confirming the majority award. That case involved the reinstatement of an employee who had tested positive for drugs. This court, the Fifth Circuit, you looked at the facts, you took them as they were, but you said reinstating that employee would violate the well-established U.S. public policy against the use of drugs on employment premises. All right, Mr. McKinnon, stop. It seems to me Gulf Coast is a case in which the ultimate decision did not have to be undone, a fact-finding or legal conclusion. The actual decision by the arbitration panel was to reinstate somebody with this drug problem in a dangerous position. And that's, it was the decision that violated public policy. As Judge Costa has been engaging you with, it seems to me that what we're talking about is that the arbitrators decided there was a ratification. And if there were a ratification, that's not a violation of public policy. So you're a step, in this case, removed, it seems to me, from Gulf Coast. Able counsel on the other side has already made that point in your brief response to it, but that's something you still have not overcome, in my view. Why don't you take a little bit of brief time to respond to that, even though your time has run out? I think the response, Judge Southwood, would be that, again, the label that we put on it, ratification or not, is not what's important here. What's important is that your honors take the facts as found by the arbitral tribunal, and you determine whether those facts, ratification is not a factual finding. The factual finding is awareness of alleged bribery. That's what you all owe deference to. Ratification is a legal conclusion drawn from that, a legal conclusion that goes to public policy issue, which you review de novo. So I would say we look at the facts as found, and then we determine whether those facts create a public policy issue. All right, counsel. Thank you. Thank you. Mr. Cash? Thank you, Your Honor. I'm going to spend most of my time on the discovery issue, although I am prepared to address the reasoned award issue if the court has questions. I see you're holding your microphone speaker. If that's all right with you, that's fine, but you might try it wherever it was and see if we can hear all right. I expect you can speak more easily without that in your hand. Okay. Can you hear me now? Sure. Great. So I think there's three key points to make on the discovery issue. The first is that the dissent is unprecedented. Neither side or the district court has found anything like this, where a dissent questioned the fairness and the due process in the entire arbitration process. I think the second point is that the facts related to our request to take discovery are undisputed and support discovery. And third, I think the law here supports discovery under this court and other this court's authorities and other authorities. So on the dissent issue, the dissent was issued by Mr. Gatiss. Mr. Gatiss is an accomplished and experienced arbitrator who understands the fundamental fairness and due process rights provided for in the FAA. And he specifically found in a dissent that may be short on quantity, but it's certainly very, very weighty on quality that the appellants rights to fundamental fairness and due process were violated throughout the entire arbitral process. We believe that dissent alone and the fact that he was privy to facts that occurred, things that were said, things he observed with respect to in particular arbitrator Brower, that in itself alone justifies discovery here. But there is more. As I said, on the second point, the undisputed facts, the undisputed facts show that Mr. Gatiss and the AAA, the parties from whom we sought discovery unquestionably have information that was not available to the district court, not available to the parties and is not available to this court on review that should be made available because it relates to bias, prejudice, and misconduct. How do we know that? Well, we have arbitrator Brower's time records. You may find those in the record at page 9573. That's 9573. If you look at no other page in the record, you should focus on this page because it shows that arbitrator Brower spent 33 hours focusing on accusations by Mr. Gatiss of prejudice, bias, misconduct, things where he questioned whether or not the process was fair. The AAA, again, on that same page, it shows it conducted a conference call with the arbitrators. It collected additional information. It has that information. The arbitrators have that information. And the district court erred here because it went ahead and ruled on the motion to vacate without having a full and complete factual record as is required under the FAA when reviewing an award to vacate. Mr. Katz, give us your best case or cases that would justify discovery under these circumstances. Sure. There's several. I would start, obviously, with this court's authority in the Karaha-Bodas versus Pertamina case, which I'll refer to the Pertamina case. In the Pertamina case, this court adopted essentially the test put forward from the district, which adopted from the Southern District of New York in the Frayer versus Orthofix case, the test that basically has two parts. It basically says, is the discovery sought relevant and necessary? And two, will it resolve factual questions that are not apparent from the face of the arbitral record? That test is clearly met here. How do we know that? Well, we know because the facts here, again, relate to bias, prejudice or misconduct. They relate to our show that arbitrator Brower spent 33 hours addressing Mr. Gatiss' accusations and that the AAA required additional information. And we know that those things that went on are not apparent from the face of the arbitral record. These are things outside of what happened at the hearing or outside when the parties were there. So these are facts that the arbitrators are privy to. And essentially here, Mr. Gatiss is like a fact witness, right? He saw things. Mr. Gatiss, I have a procedural question about this argument. Let's say just hypothetically, you convince us and we say there should have been discovery. But you, the district court, rejected and dismissed your arguments that you received an impartial tribunal and all those claims related to this arbitrator. So would you then want to revive those? I mean, it just seems a weird posture. They were dismissed. You didn't appeal those issues. But then if you went on this discovery issue, you'd be able in the district court to revive those claims that have already been dismissed. That is correct. I mean, we did appeal them. We appealed on the basis of a two and a three, the lack of discovery. If I may finish just briefly here, although my time's out, I think what's what is clear is if you look, for example, at the host case, H.O.E.F.T. from the Second Circuit, it makes it clear that federal courts are not rubber stamps when it comes to ruling on vacater issues, that the courts are not supposed to approve arbitration awards tainted by corruption, bias and prejudice or misconduct. OK, so the district court here erred. And the reason we can go back is because it found that we had carried our burden or that we had not. The record didn't support our allegations under a two and a three without looking at a complete factual record as is required. So I disagree that we did not appeal that. I disagree that we somehow waive that. I know Vantage has made that argument. So at the end of the day, based upon the relief we see here, we are asking this court to vacate the district court's judgment, remand with instructions that says, grant motion for leave to take discovery. And once discovery is part of the record, the district court revisits our motion to vacate under 10A2 and 10A3 with a full and complete factual record as is required by the FAA in cases like H.O.E.F.T. All right. We'll hear from Ms. Sullivan. Thank you, Your Honor. Good morning and may it please the court, Kathleen Sullivan for Appley Vantage. I'd like to begin with the public policy argument and to state that the district court was correct in rejecting the Panama Convention public policy argument because the public policy exception, which has never been applied in any Panama Convention or New York Convention case of which we're aware, would apply only where the arbitrator's conclusions taking the facts and law as found by the arbitrators would violate public policy. And as already discussed by the panel in colloquy with my colleague on the other side, the arbitrators here found as a matter of fact that Petrobras knowingly ratified the contract despite knowledge of bribery and found as a matter of law that the ratification, the quantum of evidence of bribery sufficient to support that ratification was adequate. So to go back to Judge Duncan's spectrum, this is a case where it's a far cry from a mere allegation of bribery. There was, as Judge Duncan pointed out, there was an internal audit concluded in October of 2013, an audit that found allegations of bribery sufficiently severely made out by the evidence in the record that the audit report concluded with a recommendation that the matter be referred to prosecutors in Brazil. So that's an internal audit that goes far beyond mere allegations of bribery. There's actual knowledge of bribery. Moreover, that was the investigation by Petrobras internally was prompted by the APOCA article, the article that appeared in the article. It involved a confession, an admission by a co-conspirator to the bribes, Mr. Enriquez. And the reporter was available to be called at the arbitration. The interview was recorded. And Enriquez stated all the material facts in that article that Petrobras needed to by a vantage director with respect to the exact contract at issue, the DSA, the use of the titanium explorer rig, and that the contract was procured by that bribery. And what does Petrobras do at that point in October 2013 after APOCA comes out or October 2013 after the audit? Absolutely nothing. The contract would be void, voidable, would be voidable at that point. If Petrobras had picked up the phone and called Houston and said, hey, what about this bribery that was used to procure your contract? We want out of the deal. And for all we know, Vantage might have said, okay, fine. Oil's at $100 a barrel. We'll find another contract. We'll let you out. That might have happened. Or Petrobras could at that point have gone to the arbitrators and sought some sort of declaratory judgment saying, hey, we read this article. It's an admission. It's a confession of bribery. We'd like a declaratory judgment that we can void our contract. They did none of those things. Let me ask, what is the significance of what you have been saying? It seems to me you're trying to emphasize that there was significant evidence known about the bribery, even if perhaps complete knowledge wasn't there. How relevant is that, though, to the decision you think we need to make on whether there's a public policy exception applicable to this decision? It is not relevant, Your Honor, in the sense that the standard of review here precludes inquiry into the factual or legal basis for the arbitrator's decision. The sole question before this court is whether, as you stated, Your Honor, it violates public policy, taking the arbitrator's decision as it comes, that this was a contract ratified despite actual knowledge of bribery. You must take that as it comes. And that decision is consistent with U.S. public policy. So we actually believe you need not inquire further than the arbitrator's that Mr. McKinnon has said, well, there's a deeper issue about whether the law of ratification was violated here, because this was an allegation case and not an actual knowledge case. I'm just trying to say, first of all, it was an actual knowledge case. The panel, the arbitral panel, had every basis to conclude in this record that there was knowledge of bribery and ratification nonetheless. Remember, Petrobras doesn't change its mind until after oil prices plummet in late 2014, and then it wants out when we're down at $30 to $40 a barrel and not $100. That's a classic case of ratification. You are not allowed under ratification law to take the benefits of the bargain and stick with it when you could have avoided it in good times and then change your mind. Our first argument would be you need not pay any attention to anything I just said about the factual and legal support for the arbitrator's conclusion. But should you think that you need to explore on public policy grounds whether this is a deficient ratification, we respectfully suggest that there's absolutely no basis to question the arbitrator's judgment. The judgment was correct. I was struck that Mr. McKinnon was unable to cite any case in answer to the panel's question and suggesting that you could flip an award, as Judge Costa said, by an arbitral panel in order to reach the public policy exception. That's because there is none. And as to the Finley case, I just want to remind the court that that venerable case from 1895 in the Sixth Circuit was a case that sent the ratification issue back to the jury for a fact finder to describe. And here, of course, we don't have a jury. We have the arbitrators who Petrobras contracted to give the fact-finding function to. And this court is not, it is not frankly within your power to peek behind the arbitral award into whether the fact-finding by the arbitrators was correct. So respectfully, Your Honor, you can ignore everything I just said about why it was correct because you must take the decision as you find it. I just want to assure the court that should you think there's any reason to look at whether the ratification was adequate enough to satisfy American policy on ratified contracts despite bribery are okay, you would find ample support for the decision in this case. Ms. Sullivan, you were just responding to my questions which Judge Southwick is saying was irrelevant, but I understand. That's quite all right. Your Honor, I wanted to make sure that I had adequately answered your questions about the adequacy of ratification. We're at the high end of your spectrum here, Your Honor. And therefore, this is the last case in which I would want to be the first court to ever find a public policy exception to the absolutely standard bedrock principle that parties may ratify a contract procured by bribery as by other fraud. If there are no further questions on the bribery or public policy issue, I'll just turn briefly to whether you should remand for discovery. Again, I want to start with the extraordinary nature of Petrobras' request here. It's as extraordinary a discovery as it is on public policy. They're asking you to reopen a voluminous arbitral record, three years, thousands of pages of transcripts, tens of thousands of pages of exhibits, in order to depose the dissenting arbitrator who issued a cryptic blunderbuss dissent that said everything about the arbitral proceeding was flawed. After Petrobras, not only once but twice, sought to disqualify Judge Brower, both before, after the merits hearing, and before the final award, and again after the final award. That is quite extraordinary. Let me ask you something, excuse me, before you move forward. How extraordinary is that dissent? We certainly see arbitration decisions here, but if in fact the dissenting arbitrator had significant concerns about due process, fairness to one side or the other, is that the way such concerns are raised? What were the options for an arbitrator who actually thought the process was unfair, other than judges don't usually express themselves in quite those terms, but we can think it can be a strongly incorrect and unfair decision, but don't go much beyond that. What should we make of that dissent insofar as a matter of process? Is that the way, about the only way the arbitrator had to proceed, dissenting arbitrator? No, your honor. The arbitrator, the dissenting arbitrator, had the option which was exercised by, had the option to ask the AAA, the governor of the arbitral procedure here, to rectify any supposed unfairness in the record, at which Petrobras did twice. They sought to disqualify Judge Brower, the judge they were complaining about for having interrupted their witness too many times, and they failed on that count. So I think the more important thing about what's extraordinary about the dissent, your honor, is how dangerous it would be to reopen inquiry into the confidential arbitral proceedings here, based on such a vague and conclusory dissent. Contrast it, your honor, for example, with the Fertilizantes case from the which the dissents detailed over a hundred pages of specific allegations of supposed misconduct and unfairness. And I think it would be a terrible precedent for this court to say the dissenting party appointed arbitrator for the losing party can lobby on a cryptic dissent with no detail, with no stated factual allegations, unlike Fertilizantes, and then get to undo the entire arbitral proceeding based on that conclusory statement. And your honor, it's rare, but that's because no one's had the audacity, I think, to try to reopen a completed arbitration with such a cryptic response. Your honor, the second thing that the arbitrator could do is appeal to his, you know, to his co-panelists. And I think another extraordinary fact about this record that supports the district court's rejection of the deposition request is that you have a concurrence here between Judge Brower and Dr. Park. And Petrobras isn't accusing the chairman, Dr. Park, of any misconduct here. And yet Dr. Park, we know from the record, the district court knew from the record, was privy to all of these allegations about Judge Brower's supposed intrusion into the case or one-sidedness. And Dr. Park, who's completely innocent here, not accused of any misconduct, concurs not only with the substantive outcome. Remember that there's a specific paragraph in the arbitral award that states that we have examined the allegations here and we find that there was no unfairness or misconduct. So your honor, the alternatives are go to the AAA, talk to your fellow panelists. That was done here. That should be the end of the matter. And the only thing that would be extraordinary here would be to allow a party-appointed arbitrator to blow up an arbitration by lobbying in a cryptic dissent. So your honor, those are our suggestions. Ms. Sullivan, did the rules of the AAA prevent Gaddis from just voluntarily coming forward? I mean, is that why they needed to subpoena him instead of, I mean, if he really thought this was an outrageous procedural development in the arbitration, why couldn't he have just voluntarily complied? Is that because there's AAA rules that in terms of confidentiality? Well, your honor, AAA rule 52E prevents Petrobras from calling the arbitrator as a witness. So we agree Petrobras was foreclosed from calling him, but nothing in the AAA rules would have prevented Gaddis from coming forward. And I've suggested that Gaddis could have to the AAA and Petrobras invoked procedures with the AAA that effectively produced that result. The AAA did, between the merits hearing and the final award, the AAA conducts an investigation between the merits hearing and the final award. The majority, including Dr. Park, whose conduct is not in any way impugned here, look at the fundamental unfairness and due process characterizations and reject them, explicitly find in their final award that they were not made out. I would refer your honor to a record on appeal at page 137, paragraphs 527 to 529, which reject the dissents due process allegations. So your honors, if there was no lack of opportunity to explore these fundamental unfairness allegations, those opportunities were availed of by Petrobras in the AAA request to disqualify Brower. And we think it would be most extraordinary to say the district court had to go beyond a record that was that fully ventilated at the arbitral level. I know my colleagues keep making a big deal about how Judge Brower spent a lot of hours, as reflected in his time records, exploring Gaddis's allegations. That just shows that it was taken seriously within the arbitral process. And your honors asked for Mr. Katz's best cases. I would first point out that the only cases in which the extraordinary step of deposing an arbitrator is a case of partiality or conflicts of interest, where an arbitrator had an undisclosed business interest in the opposing side, for example, this is such a far cry from that case. The other sides dropped any suggestion that Judge Brower had a former law clerk who worked at Vantage's firm as a basis for partiality. And they're not really suggesting partiality here. They're suggesting he interrupted witnesses and said, asked and answered and was brusque or engaged in extended colloquy. These are nowhere close to the cases involving partiality and conflict that are cited by Mr. Katz. But the other point is that this circuit has been very clear. And I would cite as our best case, Legion Insurance, this court's 1987 case, which held that you don't want to have courts lightly intrude into the confidential processes of the arbitration, because that would undo all of the benefits for which the court bargained by selecting arbitration as a form of dispute resolution. And you don't want to do it lightly, especially in a case where the allegations are so unspecific as here. So, Your Honor, we think it would be quite extraordinary and novel for this court to insist that the district court go beyond the record here. The same, and again, it's an abuse of discretion standard. The court was exercising its discretion in deciding that further discovery was unwarranted by any facts presented in the record. And to depose an arbitrator would be a very serious thing. Now, my colleagues on the other side might say, well, how does it intrude into the confidentiality of the process to just depose Gatiss? But as the district court noted and said expressly on the record, I can't just depose Gatiss. I have to talk to the other arbitrators if I'm going to listen to what Gatiss has to say, because I have to hear what they have to say. And that would mean I'm knee-deep in the confidential deliberations of the panel. So we think the district court was well within his discretion. We think he was correct to reject this intrusion into the arbitral panel deliberations, but at a minimum, he was within his broad discretion under legion insurance and other cases of this court. If the panel has no further questions on the Gatiss deposition, we'd certainly submit that the standard of review also precludes reopening the record to subpoena the AAA. Recall that the district court rejects that request because it's a sandbagging request at the final hour made just a few weeks before the motion to vacate was scheduled to be heard. Petrobras sat on that request for several months after it had made the rejected request to depose Gatiss, and the district court was well within its discretion to say that that sort of last-minute imposition of delay would destroy the expedition that arbitral processes are supposed to accomplish. So we do not think you should open this up and send it back for more discovery. We do think it's telling that Petrobras does not pursue on appeal the various grounds for vacator on the merits that it pursued in the district court, and we would submit this is a case in which the danger of opening up a fishing expedition is severe, and the court should affirm the denial of the deposition and subpoena request. If the court has no further questions on the other issues in the case, we're happy to rely on our briefs for the remainder of our argument. All right, counsel, thanks for your argument and for the two minutes back. Thank you, your honor. We'll hear in rebuttal first from Mr. McKinnon. Briefly, the first point I want to address is there's a reason that my colleague, my adversary went straight to the evidence in the record of actual knowledge of bribery, and that's because the majority award does not conclude. It does not conclude that Petrobras had knowledge of bribery. All it says, and it says it repeatedly, is that Petrobras was aware of allegations of bribery. You can go to the evidence, of course, that my adversary has gone to, the newspaper article and the audit report, and what those two documents will show you is that while Petrobras was aware of allegations of bribery, the audit report expressly indicates that it could not confirm the veracity of the bribery allegations. So what we have here on the factual record is awareness of alleged bribery. Another point on the idea that you should defer to the legal conclusion of ratification. That cannot be correct. If this tribunal here had determined that there was bribery, but the contract is nonetheless enforceable as a matter of law, your honors would not, I submit, defer to that decision because it would violate public policy. It would violate public policy. That is the same thing with the ratification issue. You've got the facts in the arbitration award. Bribery's there. Their shareholder and controller of four board seats and on their board pay bribes to get this contract. This is part of the biggest bribery scheme that the world has ever seen. The question is, is a knowledge of allegations of bribery enough? Just a quick question, Mr. McKinnon. At what point, in your view, does the does the knowledge of bribery rise to the level of actual knowledge as opposed to allegations? When does that happen? In this case, that happens when Mr. Padilla, Vantage's agent, signs a guilty plea, confesses to his crimes in July 2015, and not surprisingly, the very next month, Petrobras terminates the DSA. To require Petrobras to terminate the DSA earlier on the basis of a newspaper article, and that newspaper article itself indicates that the allegations contained there are contested by the witnesses. By others, the newspaper article, they reach out to the witnesses, and the article itself says these are contested allegations. Petrobras, unlike Vantage, does a very thorough audit two months later, and it determines it cannot confirm the veracity of the bribery allegations. You can't put Petrobras to the choice of ratification consistent with U.S. public policy. All of the cases cited by both parties, our adversary has not cited a single case, allegations where awareness of alleged bribery is enough. You can't put Petrobras to the choice of ratification based on allegations of bribery. That would violate U.S. public policy. And with that, my time is up. Thank you, your honors. Thank you. You get to go last, Mr. Katz. Sum it all up for us. Thank you, Judge Southwick. First off, Judge Southwick, in answer to your questions, the dissent is extraordinary. We have looked for one, similar one. Vantage has, the district court has. There is no similar dissent that is challenged and questioned the fairness and fundamental fairness in public policy and in arbitration. Following up on your question, Judge Costa, the answer is there is a prohibition why Mr. Gatiss could not say more. The AAA has rules and it also has canons governing the conduct of arbitrators. And those canons, the AAA could tell Mr. Gatiss he could not say more. Now, those canons, the merit case, the merit insurance versus Leatherby case, it's a Seventh Circuit case, make it clear that the AAA's rules and ethical canons do not restrict this court in any way, shape or form. They don't have the force of law. They don't have the force of law, but when we're deciding if the district court abused its discretion, why can't a court give respect to those confidentiality provisions, which, you know, judges, federal judges wouldn't want their deliberations exposed. So it makes a sense that the AAA has those restrictions. Two points. First off, the standard is abuse of discretion. However, there are no disputed fact questions related to our efforts to take discovery. So it's strictly questions of law. And obviously the district court abuses its discretion. It's partly a judgment call. And in deciding how to exercise his judgment, the district court says, I don't want to interfere with this policy the AAA has to protect arbitrators' confidentiality. The district court cannot do that. The district court must conduct a de novo review under the FAA. Okay. And then although the standard is abuse of discretion, these are just legal questions. These, these issues, the AAA rules, the AAA ethical prohibitions do not in any way restrict this court. The Hove case makes it clear parties cannot contractually provide for a lower level of review. Matt, I'm going to finish, please. The FAA establishes a floor by which the parties may not contractually provide for by adopting or providing for arbitral rules or an arbitral institution to preside over a hearing cannot provide for a lower standard. And the issue here is that if just by deferring to the AAA, which as Ms. Sullivan has said that you should, you would be potentially creating a circuit conflict. Okay. Because the second circuit has clearly said parties cannot contractually by agreeing to arbitrate with a particular institution provide for a lesser standard than that guaranteed by the FAA. All right, Mr. Katz, we thank all three of you for your able advocacy today. We'll get you a resolution as soon as we can.